## DUPUY *et al. v.* LEAVENWORTH *et als.*

In equity, real property acquired with partnership funds for partnership purposes is regarded as personal estate, so far as the payment of partnership debts and the adjustment of partnership rights are concerned; and it is immaterial in whose name the legal title of the property stands; whether in the individual name of one copartner, or in the joint names of all—it is first subject to the payment of partnership debts, and then to be distributed among the copartners according to their respective rights.

The possessor of the legal title in such case, holds the estate in trust for the purposes of the partnership; and until such purposes are accomplished, each partner has an equitable interest in the property. Upon the dissolution of the copartnership by the death of one of its members, the surviving partner, who is charged with the duty of paying the debts, can dispose of this equitable interest, and the purchaser can compel the heirs-at-law of the deceased partner to perfect the purchase by conveyance of the legal title.

Where two partners purchased in the firm name, with firm funds and for partner-

ship purposes, a lot of land, and one then absconds with all the available funds of the firm, leaving his copartner without sufficient means to pay the debts of the copartnership, and he in good faith first exhausts the personal property to pay debts of the concern, and this is insufficient, he may then convey in the firm name the interest of the firm in the lot to pay debts, and the grantee can in equity compel a conveyance of the legal title to the undivided half of the lot, standing in the absconding partner's name, from him or from parties taking a conveyance from him with notice of its partnership character.

This rule is not in conflict with the doctrine that real property of a copartnership may be conveyed by one partner, on his individual account, to the extent of his legal title, so as to cut off the equitable rights of the copartnership, or its liability to the payment of the copartnership debts. A *bona fide* purchaser, for a valuable consideration, without notice of the partnership character of the property, will take the title in such cases, freed from the equitable claims of others, upon grounds of policy.

The civil law would, under the special circumstances of this case, reach the same result.

Norris, being a defendant, was a good witness for plaintiff.

Where several persons conspire to obtain the land of plaintiff, and in suit against them to recover the property, two of the defendants disclaim all interest therein : *Held*, to be no ground for dismissing the suit as to them, as they were proper parties and are liable for costs.

APPEAL from the Twelfth District.

The facts are stated in the opinion of this Court. Leavenworth, Shelly, Baker and Norris were made defendants. The three former appeal.

*Porter & Sawyer*, for Appellents, upon the general question of the power of one partner over real estate standing in the name of the firm, cited under appropriate subdivisions not necessary to be specified, Collyer on Part. sec. 1 ; 2 Blac. Com. 183, 185, *n* 13 ; 5 Hill, 107 ; 4 Kent, 363, 386, 387 ; 11 Mass. 472 ; Co. Litt. 199, *b ;* 5 Burrows, 2604 ; Cowp. 217 ; 1 East. 568 ; 11 Id. 49 ; 2 Sug. Vend. 63, *n* 3 and cases cited ; 3 Brown's Ch. 199 ; 9 Vesey, 500 ; 7 Id. 453 ; *Crookson* v. *Crookson*, 8 Sim. 529 ; 7 Id. 271 ; 15 Johns. 159 ; 2 Edw. Ch. 28 ; 3 How. 360 ; *Green* v. *Green*, 1 Ham. ; 8 Ohio 364 ; 2 Dessau, 471 ; 1 Story's Equity, 624 ; 3 Kent, 37-8, *n* and 40 ; 19 Me. 16 ; Collyer on Part. secs. 135, 149 ; 1 Walk. (Mich.) 203 ; 5 Ala. N. S. 446 ; 10 Leigh, 406, 423–425 ; 7 S. and R. 438 ; 1 Dev. Eq. 103 ; 1 Brockenbrough, 463 ; 10 La. 420 ; 4 Id. 397 ; Story on Part. 176 ; 3 La.

497 ; 1 Ann. 432 ; 4 Id. 216 ; 17 La. 596 ; La. Civil Code, arts. 2807, 2861, 2847, 2180 ; Troubat's Law of Limited Part. secs. 166–172 ; Collyer on Part. 154–156 ; 2 Sug. on Vend. 384, *n ;* 2 Munf. 387 ; 3 How. (Miss.) 360 ; 5 Ohio, 164 ; 3 Rob. (La.) 256 ; Code Nap. 1872 ; La. Civil Code, art. 2795, 6, 2441, sec. 4, 2843, 2844 ; 6 La. 407 ; Duranton, liv..9, sec. 1, No. 346 ; 5 La. 403 ; 7 Cal. 155 ; 4 Martin, N. S. 157 ; Story on Cont. 213, 217.

*Hoge & Wilson,* for Respondents, cited Story on Part. 135, 137–8–9 and cases ; Coll. on Part. 117, *et seq.* and notes ; *Dyer* v. *Clark,* 5 Met. 562 ; *Howard* v. *Priest,* Id. 582–585 ; *Hoxie* v. *Carr,* 1 Sum. 173 ; *Beaman* v. *Whitney,* 20 Me. 413 ; *Pierce* v. *Trigg,* 10 Leigh, 486 ; *Buchan* v. *Sumner,* 2 Barb. Ch. 165 ; *Richardson* v. *Wyatt,* 2 Dessau, 471 ; *Sumner* v. *Hampson,* 8 Ohio, 328 ; *Sigourney* v. *Munn,* 7 Conn. 11 ; *Bryer* v. *Elliott,* 7 Humph. 204 ; *Delmonico* v. *Gulliam,* 2 Sandf. Ch. 366 ; *Boyce* v. *Castor,* 4 Strobh. Eq. 25 ; *Robinson* v. *Crowder,* 4 McCord, 538 ; 2 Humph. 459 ; 21 Ala. 437 ; 23 Id. 837 ; 21 Penn. 257 ; 2 Moreau and Carleton's Partidas, 765–769, 773–774, 780 ; 1 Domat's Civ. L. (Strahan) 351–354, secs. 767, 774 ; 8 Ohio, 364–5 ; 9 Cal. 639 ; *Laffan* v. *Naglee,* Id. 687 ; 3 Rob. (La.) 331 ; 9 Martin, 592 ; 4 Ohio, 17–18 ; 1 Domat's Civ. L. 200–202 and notes ; 1 Moreau & Carl. Part. 396–398, Laws 6–8 ; 9 Cal. 66–7 ; 6 Watts & Serg. 310 ; 5 Cranch, 289 ; *Anderson* v. *Tompkins,* 1 Brock. 458 ; *Forbes* v. *Scannell,* 13 Cal. ; 6 Grattan, 197 ; Parsons on Mer. Law, 175, note 1 ; 1 E. D. Smith, 341 ; 8 Leigh, 415 ; 1 Doug. (Mich.) 490 ; 5 Watts, 22–24 ; 23 Ala. 524 ; 21 Id. 442–3 ; 1 Dev. & Batt. Eq. 510 ; Walker's Ch. 200 ; 16 Geo. 424 ; 2 Sandf. Ch. 367 ; 5 Hill, 111 ; Story on Part. 117–120, 129–132 and notes ; 5 Cal. 470 ; 1 Blac. 17, 18 *et seq. ;* Id. 3d book, 434 ; 2 Dan. Ch. Pr. 814 ; 6 Rob. (La.) 127 ; 15 Wend. 178 ; *Cluggage* v. *Lessee of Duncan,* 1 Leroy and R. 122 ; 7 Cow. 641 ; 1 Moreau & Carl. 364–5 ; Gow. on Part. 49 ; 3 La. Ann. 322 ; *Ward* v. *Brandt,* 11 Martin, 427 ; 5 Id. 567 ; Id. 626 ; 18 La. 505 ; 2 Ann. (La.) 87 ; 8 Mart. (O. S.) 483.

As to ratification by Shelly, see *Smith* v. *Kerr,* 3 Comst. 144

and cases cited; *Lawrence* v. *Taylor*, 5 Hill, 107; *Pike* v. *Bacon*, 8 Shep. 280; *McDonald* v. *Eggleston*, 26 Vt. 164; *Herbert* v. *Hamrick*, 16 Ala. 581; *Bond* v. *Aitkin*, 6 Watts & Serg. 165; *Price* v. *Alexander*, 2 Greene (Iowa) 427; *Swan* v. *Steadman*, 4 Metc. 548; *Pitts* v. *Sherbert*, 11 La. (O. S.) 288, citing the civil law authorities; *Flower et al.* v. *Jones et al.* 7 Mart. 143; 1 Livermore on Agency, 50, 338, 392–6; 2 Mo. & Car. Part. 648, Law 48, 1242, Rule 10; *Clayton* v. *Walker*, 10 Cal. 454; La. Civil Code Act, 2796, 2841; 16 La. 420; 3 Rob. 256; 7 Martin, 243; 1 Ann. (La.) 434. To show that the foregoing authorities, as to the view equity takes of partnership lands, are not inconsistent with the doctrine that one partner may sell his individual interest to *bona fide* purchaser at law, counsel cited Coll. on Part. 121, 122; 3 Kent, 37; 1 Story's Eq. 624; 1 Pet. C. C. R. 460. To show that *Cole* v. *Cole*, 15 Johns. 159; *Godwin* v. *Richardson*, 11 Mass. 469; *Thornton* v. *Dixon*, 3 Bro. Ch. 199, cited by appellants, are overruled, counsel cited Greenl. Overruled Cases under each of those titles; Coll. on Part. 119, 120, 121 *et seq.* and the notes; *Dyer* v. *Clark*, 5 Metc.; *Hoxie* v. *Carr*, 1 Sum.; *Thayer* v. *Lane*, 1 Walk. Ch. (Mich.) 203.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

This is a suit on the equity side of the Court to quiet, or rather to perfect, the title of the plaintiffs to certain premises situated within the city of San Francisco. The facts of the case, as established by the evidence embodied in the record, are briefly as follows. In 1847, the defendants, Percy B. Shelly and Samuel Norris, were copartners in mercantile business in San Francisco. In July of that year the authorities of that town sold at public auction certain beach and water lots; and at the sale the defendant Norris bid off the premises described in the complaint—designated as lot number one hundred and eighteen—in the firm name of Shelly & Norris, for six hundred and twenty dollars. Of this sum he paid at the time, to the first Alcalde for the town, one hundred and fifty-five dollars, and the defendant Shelly executed, in the name of the firm, an undertaking—in the form of a bond, but without any seal

18

affixed—for the payment of the balance, with interest, in three installments, at six, twelve and eighteen months.   The Alcalde thereupon gave to Shelly & Norris a certificate to the effect that they had purchased the lot, and executed the bond referred to; that the bond and the deed for the lot were filed and recorded, and that the latter would be delivered on the payment of the last installment of the purchase money.   The premises in question were intended for the purposes of the copartnership, and the cash payment at the sale and the first installment on the bond were paid out of copartnership funds.   In March, 1848, Shelly, under pretense of making a visit of a few days to San José, absconded with all the available effects of the firm, leaving Norris without the requisite means to settle with their creditors.   Attachments followed, which closed up the business of the concern.   The effects and property remaining were turned over to the creditors and applied, so far as they would go, to the satisfaction of their claims.   After the personal property was in this way exhausted, the lot in question was disposed of to William H. Davis, one of the creditors, in part payment of the debt due to him.   The lot was not at the time worth the sum for which it was bid in at the sale, but Davis agreed to take it and credit the firm the amount advanced of the purchase money, and to pay the balance.   Norris thereupon executed in the firm name of Shelly & Norris a conveyance to Davis, who paid the remaining installments and received the bond from the Alcalde, together with the deed prepared for delivery and placed on record.   Davis subsequently went into possession of the premises, and improved them at an expense of several thousand dollars.   The plaintiffs derive their title by sundry mesne conveyances from him.

Shelly never returned to San Francisco until some time in the year 1854, and he then learned all the particulars of the affairs of the old firm, and of the sale of the premises in question, and made no objection to the course pursued by his partner.   In 1856, Norris related to him in detail the manner in which the copartnership effects and lot were disposed of and the accounts settled, and he then expressed his entire satisfaction with what had been done.

In May, 1859, Shelly executed a conveyance of all his right, title and interest in the premises in question, to the defendant

Baker, for the consideration, as expressed therein, of five thousand dollars, claiming at the time that the conveyance of Norris to Davis, in 1848, only operated to pass an undivided half interest. The plaintiffs thereupon instituted the present suit, and in their complaint charge that the conveyance to Baker was the result of collusion and conspiracy between Leavenworth, Shelly and Baker, to defraud the plaintiffs and to extort money from them; that the consideration expressed therein is fictitious, and was never paid or agreed to be paid; that Leavenworth and Baker were both cognizant of the facts relating to the conveyance by Norris to Davis, and that Baker is not a *bona fide* purchaser for a valuable consideration, and holds the premises as a trustee, in part or in whole, for Leavenworth and Shelly, upon some agreement for mutual profit and benefit. The complaint concludes with a prayer, among other things, that Leavenworth, Shelly and Baker be enjoined from making a transfer of the premises, and be decreed to convey to the plaintiffs all their interest in the same, or, on failure to do so, that a Commissioner be appointed to execute such conveyance in their names. The Court found that the material facts stated in the complaint were true, and rendered judgment substantially in conformity with its prayer.

The principal ground upon which the defendants rely for a reversal of the judgment is, the alleged want of authority in Norris to execute a conveyance so as to pass the entire interest of the copartnership in the premises. The proposition asserted is, that the copartners were tenants in common of this real property, and that neither could transfer the interest of the other; in other words, that the rule of copartnership, by which each individual member possesses full authority to dispose of the entirety of particular personal effects of the firm, and not merely of his own share, does not prevail with respect to real property; but as to this kind of property, all the members must unite in the conveyance to transfer the entire interest. Such is, undoubtedly, the rule at law, but in equity a different doctrine prevails. In equity, real property acquired with partnership funds for partnership purposes is regarded as personal estate, so far as the payment of partnership debts and the adjustment of partnership rights are concerned. The real and.

beneficial interest which each partner possesses in the partnership property is the balance coming to him after the payment of the partnership debts, and the settlement of accounts with his copartners.    And, in the view of equity, it is immaterial in whose name the legal title of the property stands—whether in the individual name of one copartner, or in the joint names of all; it is first subject to the payment of the partnership debts, and is then to be distributed among the copartners according to their respective rights. The possessor of the legal title in such case holds the estate in trust, for the purposes of the copartnership.    Each partner has an equitable interest in the property until such purposes are accomplished.    Upon the dissolution of the copartnership by the death of one of its members, the surviving partner, who is charged with the duty of paying the debts, can dispose of this equitable interest, and the purchaser can compel the heirs-at-law of the deceased partner to perfect the purchase by conveyance of the legal title. (See *Andrew's Heirs* v. *Brown's Heirs*, 21 Ala. 443; *Delmonico* v. *Guillaume*, 2 Sand. Ch. 367.)

Under the special circumstances of this case—Shelly having absconded with all the available funds of the firm, leaving Norris without sufficient means to pay the debts of the copartnership, and the personal property having been, in good faith, first exhausted and found to be insufficient—it is not perceived why the same rule which governs as to the authority of the surviving partner should not apply.    We are of the opinion that it does apply; and that under the circumstances stated, the equitable right and interest to the one undivided half, the legal title of which stood in Shelly's name, passed by the conveyance to Davis; and that the plaintiffs, representing Davis, and succeeding to his rights, are entitled to come into equity to compel a conveyance of the legal title from Shelly, or parties taking a conveyance from him with notice of its partnership character.    Nor is this opinion in conflict with the doctrine that real property of a copartnership may be conveyed by one partner, on his individual account, to the extent of his legal title, so as to cut off the equitable rights of the copartnership, or its liability to the payment of the copartnership debts. A *bona fide* purchaser, for a valuable consideration, without

notice of the partnership character of the property, will take the title in such cases, freed from the equitable claims of others, upon grounds of the highest policy. But the defendant Baker does not occupy the position of such a purchaser. He had full knowledge of the facts of the case, or, at least, information sufficient to put him upon inquiry. The purchase by him was evidently a speculation based upon the supposed defect in the conveyance of Norris, and he is not entitled to any consideration from a court of equity. Leavenworth was Alcalde in 1848, and acted as the legal adviser of Norris at the time the latter made the conveyance to Davis, and yet he appears by the record before us to have suggested the scheme, which Shelly and Baker attempted to carry out.

We have considered this case thus far without reference to the civil law, which was in force in this State at the time the conveyance to Davis was made. The counsel of the appellants suggested on the argument, that the doctrines of that law differ with reference to the transaction in question from the equitable doctrines invoked under our system; but, if correct in this particular, he has entirely failed to show us in what respect the difference exists. We think, however, the learned counsel is mistaken. So far as the merits of the case are concerned, there is nothing in the civil law which exempted the real property in question, or rather, the right by the contract to demand such property upon the payment of the balance of the purchase money, from appropriation to the discharge of the copartnership obligations; and it having been in good faith appropriated in that way, it would be a reproach to the administration of justice if, under the circumstances of the case, and the subsequent approval of the disposition made by Norris, a court of equity would permit Shelly, Baker and Leavenworth to succeed in their attempt to deprive the plaintiffs of it after they have occupied it for years, and made it valuable by large expenditures.

The other grounds taken by the defendants are without merit. Norris was a competent witness, under the statute, for the plaintiffs, being a defendant in the suit.

There was no error in refusing to dismiss the suit as to Leavenworth and Shelly, even if they disclaimed as to any interest in the

property in question.   Confederates in an attempt to unjustly obtain the property of the plaintiffs, they were proper though not necessary parties.   Their disclaimer of interest did not exempt them from liability for the costs which might be incurred in defeating the scheme which they originated.   (*McCosker* v. *Brady*, 1 Barbour Chancery Rep. 343 ; 1 Coms. 214 ; 1 Story's Equ. Plead. 232.)

Judgment affirmed.